**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSE L. RODRIGUEZ | * | |
| | * | |
| v. | * | Case No. DKC-10-3417 |
| | * | |
| GREGG HERSHBERGER, WARDEN, et al. | * | |

******

**MEMORANDUM OPINION**

Pending are Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] and Respondents' Answer. ECF No. 8. After review, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2011); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

**Background**

On June 25, 2006, Petitioner was arrested for two separate burglaries of Fratelli's Restaurant in Salisbury, Maryland. Ex. 3 at 136. While transporting Petitioner from the scene of his arrest to the Sheriff's Office, Officer Bobbie Jo Donoway noticed that Petitioner vacillated between rage and falling asleep. Exh. 3 at 137. Officer Donoway, who had no involvement in the Fratelli's investigation, asked Petitioner a series of questions to try "[t]o calm him down and to make sure that he was, in fact, okay." *Id.;* Exh. 2 at 3. Officer Donoway testified that at one point, when Petitioner was upset:

> I asked [Petitioner], I said, have you ever been arrested before because, you know, that's something to consider if you haven't been arrested before. I don't know why you are so upset. He had made the comment, yes, for taking a car. I can't keep doing this, I'm already in trouble, I'm going to jail, I did it.

Exh. 2 at 5.

On December 1, 2006, the Circuit Court for Wicomico County held a suppression hearing on the issue of Petitioner's statements to Officer Donoway. Exh. 2. The motion to suppress those statements was denied. Exh. 2 at 13-15. Petitioner's jury trial took place on December 7, 2006. Exh. 3. At trial, Officer Donoway testified about the portion of the statement where Petitioner stated, "I can't keep doing this, I'm already in trouble, I'm going to jail, I did it," but did not testify about the portion of the statement where he admitted a previous unrelated arrest for taking a car. Exh. 3 at 138.

Other evidence presented at trial about the burglary charges established that on the date of the first burglary, June 23, 2006, an eyewitness saw a dark-colored Honda parked in the back of the restaurant. Exh. 3 at 253. After the burglary, the restaurant was missing a Fratelli's bank bag containing seven or eight thousand dollars. Exh. 3 at 58. The restaurant was burglarized again two days later. Exh. 3 at 93-95. The officers noticed a suspicious person exit Fratelli's and walk toward a red Oldsmobile Alero in the restaurant's parking lot. Exh. 3 at 97, 122, 129. When officers approached the area, the suspect ran past the Alero, and the officers engaged in an unsuccessful foot chase in an attempt to apprehend the suspect. Exh. 3 at 129-30. An officer who had patrolled the area testified that the Alero had not been in the parking lot earlier that morning. Exh. 3 at 123. The Alero was warm to the touch when the officers responded after the burglary, indicating that it had been driven relatively recently. Exh. 3 at 99, 122. Later that morning, Petitioner arrived in the Fratelli's parking lot driving a dark-colored Honda with three passengers, Corey Clark, Jessica Murphy, and Jose Luis Gonzales Ruperto. Exh. 3 at 99. As Appellant's Honda approached the red Alero, the officers observed that Ruperto was acting "antsy," "nervous" and was moving "all over the back of the Honda" and reaching "underneath the driver's seat." Exh. 3 at 104-06. An officer described Petitioner as going "in and out of

being asleep and awake" and being "laid over the steering wheel making a sound that sounded to me like he was snoring with his eyes shut and drool." Exh. 3 at 104. One of the officers who chased the suspect testified that he could not exclude either Petitioner or Ruperto as the person he had chased. Exh. 3 at 102-03.

During a search of Petitioner's Honda, officers found a handgun under the driver's seat, and tools matching the color and brand of crowbar found at Fratelli's after the first burglary. Exh. 3 at 57, 234, 259. In the Alero's glove compartment, officers found Petitioner's driver's license, social security card, and $810 in cash. Exh. 3 at 257. Officers determined that the Alero was registered to Clark and her mother. Exh. 3 at 256.

At Petitioner's trial, Clark and Murphy testified for the State. Clark testified that on the evening of June 24, 2006, she and Petitioner were "getting high" at a house with Murphy, Ruperto, and another man. Exh. 3 at 144-46. Around 3 a.m., Petitioner left the house, saying he was going to the store for condoms. He returned several hours later without Clark's car and without condoms. Exh. 3 at 146-47, 173. Clark testified that she remained in one room the entire night with Murphy and Ruperto, and was "awake that whole time." Exh. 3 at 148. She further testified that a few days before the second robbery on June 25, 2006, she saw a Fratelli's bank bag in Petitioner's car, and Petitioner "all of a sudden" had a large sum of money in his closet. Exh. 3 at 157-60.

Murphy testified that on the evening of June 24, 2006, she, Clark, Petitioner, Ruperto, and some other men were at a house doing drugs and engaging in sexual activities. Exh. 3 at 178-79. Murphy testified that in the early morning, Petitioner left the house for "maybe an hour and 45 minutes." Exh. 3 at 180-81. She learned that Petitioner had gone when she noticed that Clark's car was not outside the house. Exh. 3 at 180. Petitioner arrived back at the house

without Clark's car and he banged on the back door instead of returning in the front door.  Exh. 3 at 181.  Both Murphy and Clark testified that later in the morning of June 25, 2006, Petitioner drove Murphy, Clark, and Ruperto to Fratelli's restaurant to pick up Clark's car.  Exh. 3 at 151-52, 183-84.

Petitioner testified in his own defense.  He testified that on the evening of June 24, 2006, he and Ruperto rode in his Honda to meet Clark and Murphy in the parking lot at Fratelli's.  He testified that the four agreed to leave the Alero at Fratelli's so they could ride in one car to buy drugs for the night.  Exh. 3 at 299-300.  They drove to a house "to have sex and use some drugs," and then they left the house the next morning in his Honda to pick up Clark's car.  Exh. 3 at 297, 298.  Petitioner testified that the cash in his wallet was money that his parents had sent him to rent an apartment because his wife was staying in a shelter.  Exh. 3 at 299.

The jury returned a guilty verdict on two counts each of burglary in the second degree, burglary in the fourth degree, and theft over $500, and one count of wearing, carrying, or transporting a handgun in a vehicle.  Exh. 3 at 362.  After the jury rendered its verdict, Petitioner was sentenced to an executed term of seventeen years in prison.  Exh. 3 at 368-69.

On direct appeal to the Court of Special Appeals of Maryland, Petitioner alleged that the trial court committed several errors, including admitting the statements Petitioner made to Officer Donoway in the absence of *Miranda* warnings.  Exh. 4 at 2.  In a reported opinion filed on March 24, 2010, the Court of Special Appeals affirmed Petitioner's judgment of conviction by a majority vote of two to one.  Exh. 7.  The dissenting judge would have reversed Petitioner's convictions on the basis that Officer Donoway's questioning of Petitioner violated the rule of *Miranda.*  Exh. 7 at 36-45.

Petitioner sought further review of his case by the Court of Appeals of Maryland, again challenging the trial court's ruling on his motion to suppress his statements. Exhibit 8. On June 21, 2010, the Petition for Writ of Certiorari was denied. Exhibit 9. Petitioner has not sought post-conviction relief. Petitioner's claim in this court is that the trial court improperly admitted his statements because he was not given *Miranda* warnings and because he was under the influence of drugs and was manipulated and coerced into giving his statements.

**Preliminary Matters**

*Exhaustion of State Remedies*

Under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in State court. This exhaustion requirement is satisfied by seeking review of the claim in the highest State court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals), and with other claims by way of post-conviction review.

Petitioner's claim has been presented on direct appeal to the Maryland Court of Appeals, and does not rely on facts or arguments substantially different than those already asserted in State court; therefore, the claim is properly exhausted for purposes of federal habeas corpus review.[1]

---

[1] Respondents contend that Petitioner did not exhaust Ground Two of his claim, "Trial court erred when I was in custody and the coercion of incriminating responses." Exh. 1. Petitioner bases this claim on the fact that "while the defendant was still under the influence of drugs the Detectives manipulated and coerced the defendant into giving incriminating evidence without an attorney present." Exh. 1. Rather than interpreting this as a separate voluntariness argument, which may not have been exhausted, this court will consider the argument as part of the totality of the circumstances to be evaluated in considering Petitioner's *Miranda* claim, as it appears to

*Statute of Limitations*

Respondents do not contend – and the court does not find – that the petition is time-barred pursuant to 28 U.S.C. § 2244(d).

**Standard of Review**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the State's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to [Supreme Court] precedent if the State court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);[2] *Renico v. Lett*, ___ U.S. ___, 130 S.Ct.

---

relate to whether or not Officer Donoway's conduct was manipulative in light of Petitioner's mental state. Arguments concerning Petitioner's mental state were raised and exhausted in the context of the *Miranda* claims both in the Court of Special Appeals, Exh. 6 at 4, and the certiorari petition, Exh. 8 at 14-19.

[2] Although 2254(d) is a "highly deferential standard for evaluating State-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), "which demands that State court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam),* a state court decision is "contrary to" clearly established federal law when "the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently that [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412-413. A State court decision is based on an "unreasonable application" of clearly established federal law when "the State court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the State court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith,* 539 U.S.

1855, 176 L.Ed.2d 678 (2010). Section 2254(e)(1) provides that a determination of a factual issue made by a State court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in State court based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the State court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). With these standards in mind, the court will address the merits of Petitioner's *Miranda* claim.

**Analysis**

*Miranda v. Arizona* provides that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). "Custodial interrogation" refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* The Supreme Court clarified, in *Rhode Island v. Innis*, that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. at 301 (footnote omitted). The police, however, "cannot be held accountable for the unforeseen results of their words or actions." *Id.* at 302.

---

510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

In applying the principles of *Miranda* and *Innis* to this case, the Court of Special Appeals noted that, "Officer Donoway was not involved in the investigation of the robberies at Fratelli's restaurant either before or after the transport of appellant to the Sheriff's Office. She was working at the airport when she was told to transport 'a subject' to the Sheriff's Office." Exh. 7 at 24. The Court of Special Appeals further noted that "during the transport, Officer Donoway was called upon to respond to appellant's behavior. Her questions were directed to finding out if appellant was okay when he appeared to pass out or to calming him down when he was angry and using profanity." Exh. 7 at 25. Finally, the state court noted:

> Regarding the precise question at issue, have you ever been arrested before," we agree with the trial court that the question was "irrelevant" to the criminal investigation of the instant case, and that appellant's initial answer, "yes, for taking a car," was "certainly not inculpatory so far as this particular case is concerned because what is inculpatory here relates to the circumstances and facts of this case, not some other case . . .for which he may have been arrested." After having answered Officer Donoway's question appropriately, appellant proceeded to spontaneously make four statements having nothing to do with the question, the last of which was "I did it."

Exh. 7 at 25-26. The state court concluded that Petitioner's "confession" constituted "a classic 'blurt' to which the protections of *Miranda* do not apply." *Id.* at 26 (citing *Prioleau v. State,* 179 Md. App. 19, 30 (2008)).

Petitioner has failed to establish that the state courts' application of *Miranda* and *Innis* was objectively unreasonable. Many courts, applying the dictates of *Innis*, have held that declarative statements can constitute "functional interrogation" even where not posed as questions. The converse proposition, that some express questions do not constitute "functional interrogation," is not as universally accepted, and some courts have ruled that any questioning is interrogation for the purposes of *Miranda* analysis. However, the Fourth Circuit has taken the position that express questioning is "interrogation" only where the questions are "reasonably

8

likely to elicit an incriminating response." *See United States v. Allen,* 13 F.3d 105, 109-10 (4th Cir. 1993); *see also United States v. Guess*, 756 F. Supp. 2d 730, 738 (E.D.Va. 2010) (citing *Allen* for that proposition).  Although Officer Donoway's communication with Petitioner took the form of a question, it cannot be described as reasonably likely to elicit an incriminating response.  No direct response to Officer Donoway's question, including the responsive portion of Petitioner's comments where he stated he had previously been arrested for taking a car, could be deemed incriminating as to the Fratelli's burglaries.  Moreover, in comparison to other police actions that have been deemed not to constitute interrogation, Officer Donoway's question was far less likely to elicit an incriminating response.  *See, e.g., Innis*, 446 U.S. at 300-303 (considering officers' speculation, in the defendant's presence after he asserted his right to counsel, about what would happen if a child found the murder weapon, which resulted in the defendant telling the officers where he had discarded it);  *United States v. Blake*, 571 F.3d 331 (4th Cir. 2009) (considering officer's "taunt" of "I bet you want to talk now, huh?" after giving statement of charges, reflecting the possibility of the death penalty, to a seventeen-year-old defendant); *United States v. Payne*, 954 F.2d 199 (4th Cir. 1992) (considering declaratory statement by agent telling defendant that police had found a gun in the defendant's house).

The fact that Petitioner was under the influence of drugs during the exchange does not alter the likelihood that Officer Donoway's question would elicit an incriminating response.  Petitioner's conduct was erratic and unpredictable, but Officer Donoway had no reason to believe that her question about past arrests, in the context of persuading Petitioner to calm down, would lead to his making an incriminating statement about the current burglaries under

investigation. As a result, it cannot be said that the state court's analysis of this issue was objectively unreasonable, and the state court's conclusions must stand.[3]

### Conclusion

Having found no merit in Petitioner's *Miranda* claim, this court will, by separate Order, deny the Petition for Writ of Habeas Corpus. Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).


Dated:   September 21, 2011                              /s/
                                                 DEBORAH K. CHASANOW
                                                 United States District Judge

---

[3] Also, although the state court did not reach a harmless error analysis, it is worth noting that even without the challenged statement, the evidence against Petitioner was overwhelming. The evidence included the similarity between Petitioner's vehicle and the vehicle seen by the eyewitness at the scene of the first burglary, the discovery of the crowbar in Petitioner's car which matched the crowbar found at Fratelli's after the first burglary, the fact that Petitioner matched the description of the suspect chased by the officers leaving the scene, and the testimony of the two cooperating witnesses, Clark and Murphy, regarding Petitioner's disappearance with the Alero on the night of the burglary and his possession of a bank bag and large sums of money after the first burglary, in addition to Petitioner's arrest when returning to the scene to pick up the Alero. Given the abundance of evidence against Petitioner, even if admission of his statement had been improper, it would be harmless error. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246 (1991) (holding that admission of coerced confessions can be harmless error).